PROB 12C
(Rev.2011)

# United States District Court
## for
## Middle District of Tennessee

## Superseding Petition for Summons for Offender Under Supervision
## [Supersedes Petition Filed as Docket Entry No. 42]

Name of Offender: <u>Billy Cleghorn</u>  Case Number: <u>2:99-00014</u>

Name of Sentencing Judicial Officer: <u>Honorable John T. Nixon, Senior United States District Judge</u>

Date of Original Sentence: <u>September 27, 2000</u>

Original Offense: <u>18 U.S.C. § 922(g) Felon In Possession of Firearm and 18 U.S.C. § 924(e) Enhanced Penalty</u>

Original Sentence: <u>180 months' custody and 5 years' supervised release</u>

Type of Supervision: <u>Supervised release</u>   Date Supervision Commenced: <u>November 27, 2012</u>

Assistant U.S. Attorney: <u>Debra T. Phillips</u>   Defense Attorney: <u>Dwight Scott</u>

---

### PETITIONING THE COURT

__X__   To Consider Additional Violations/Information.
_____   To issue a Summons.
_____   To issue a Warrant.

---

**THE COURT ORDERS:**
☐ No Action
☒ The Issuance of a Warrant:
    ☒ Sealed Pending Warrant Execution
       (cc: U.S. Probation and U.S. Marshal only)
☐ The Issuance of a Summons.
☐ Other

Considered this 22nd day of November, 2013,
and made a part of the records in the above case.

_____
John T. Nixon
Senior U.S. District Judge

I declare under penalty of perjury that the foregoing is true and correct.
Respectfully submitted,

_____
Brad Bartels
U.S. Probation Officer

Place   <u>Cookeville, TN</u>

Date   <u>November 20, 2013</u>

## ALLEGED VIOLATIONS

The information provided in the previous petition, filed as docket entry No. 42, has been amended as follows:

<u>Violation No. 1</u> - has been amended to include additional positive drug tests.

<u>Violation No. 3</u> - has been amended to include ongoing criminal associations.

<u>Violation No. 6</u> - was added to report failure to notify probation officer of law enforcement contact.

The probation officer believes that the offender has violated the following condition(s) of supervision:

<u>Violation No.</u>   <u>Nature of Noncompliance</u>

**1.**   **<u>The defendant shall refrain from any unlawful use of a controlled substance.</u>**
Mr. Cleghorn tested positive for illegal substances on the following dates:
May 21, 2013            November 4, 2013
August 14, 2013         November 6, 2013
September 24, 2013

On May 21, 2013, Mr. Cleghorn was given a drug test that was presumptively positive for amphetamines and methamphetamine. When questioned by the probation officer, Mr. Cleghorn admitted to being in a relationship with Michelle Smith. According to Mr. Cleghorn, he would spend his weekends with her and she "liked to party." The urine sample was sent to the lab for confirmation. On May 26, 2013, the probation office received lab results confirming a positive for amphetamines and methamphetamine.

On August 13, 2013, Mr. Cleghorn reported for a drug test, but after four attempts, he failed to produce a urine sample. As a result of the failed attempts, Mr. Cleghorn was given a saliva drug test that was presumptively positive for methamphetamine. When questioned by the probation officer, he denied the use of any illegal substance, but admitted to taking a 30mg pill alleged to be Adderall. There was not enough saliva to send to the testing lab for confirmation. Mr. Cleghorn was instructed to report at 8:00 a.m. the following morning, August 14, 2013, for an additional drug screen.

On August 14, 2013, Mr. Cleghorn was given a drug test that was presumptively positive for amphetamines and methamphetamine. When questioned by the probation officer, Mr. Cleghorn admitted to taking methamphetamine on August 11, 2013. Mr. Cleghorn indicated he wanted help with his addiction and was placed on the waiting list for inpatient treatment at New Leaf Recovery Center in Cookeville, Tennessee. Mr. Cleghorn was scheduled for drug testing no less than three times a week, as determined by the probation officer, until he was admitted into inpatient treatment.

On August 27, 2013, Mr. Cleghorn was admitted to the inpatient substance abuse treatment program at New Leaf Recovery Center in Cookeville, Tennessee. At the time of admission, Mr. Cleghorn tested positive for amphetamines. Mr. Cleghorn left the New Leaf Program, prematurely, on September 18, 2013, against medical advice.

On September 24, 2013, Mr. Cleghorn reported on a summons issued by the Court. Mr. Cleghorn admitted he had used methamphetamine on September 23, 2013, and tested positive for the same.

On November 4, 2013, Mr. Cleghorn was given a drug test that was presumptively positive for amphetamines and methamphetamine. The urine sample was sent to the lab for confirmation. When questioned by the probation officer, Mr. Cleghorn repeatedly denied using any illegal substances. He stated he did not understand how he tested positive for the illegal drugs. On November 12, 2013, the probation office received lab results that confirmed the urine sample was positive for methamphetamine and amphetamines.

On November 6, 2013, Mr. Cleghorn was given a drug test that was presumptively positive for amphetamines and methamphetamine. The urine sample was sent to the lab for confirmation. Mr. Cleghorn again denied using any illegal substances, and he was unsure why he tested positive. On November 12, 2013, the probation office received lab results that confirmed the urine sample was positive for methamphetamine and amphetamines.

**2.** **The defendant shall not commit another federal, state, or local crime.**
On August 24, 2013, Mr. Cleghorn was driving his vehicle when Officer James Lee, of the Cookeville Police Department, initiated a traffic stop. According to the affidavit, which is attached for Your Honor's review, officers discovered Mr. Cleghorn was in possession of digital scales, plastic baggies, and unknown white pills. Mr. Cleghorn was charged with Unlawful Possession of Drug Paraphernalia, a Class A Misdemeanor.

During the contact with police, Mr. Cleghorn placed a small plastic baggie with a dark substance, thought to be crack cocaine, in his mouth and swallowed it when officers asked him to spit it out. While conducting a search of Mr. Cleghorn's vehicle, officers located two unidentified pills believed to be scheduled drugs. Mr. Cleghorn was charged with Tampering With or Fabricating Evidence With Intent to Conceal or Destroy, a Class C Felony. Mr. Cleghorn was subsequently arrested on both charges and later released on bond. His next court date is scheduled for December 11, 2013.

**3.** **The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any persons convicted of a felony unless granted permission to do so by the probation officer.**
On August 22, 2013, Mr. Cleghorn admitted to associating with Rachel Smith, who is currently on parole with the Tennessee Department of Probation and Parole. Mr. Cleghorn denied participating in any criminal activity while in the presence of Ms. Smith, but admitted he was aware of her current parole status.

On August 24, 2013, when Mr. Cleghorn was stopped by the Cookeville Police Department, Dallas Allen and Christal Allen were both passengers in Mr. Cleghorn's vehicle. Dallas Allen is currently on federal supervision in this district and Christal Allen is on probation with the Tennessee Department of Probation and Parole. Ms. Allen's actions at the time of the arrest are notable and referenced in the police affidavit.

On September 24, 2013, Mr. Cleghorn reported on a summons issued by the Court, and he was accompanied by his cousin/girlfriend Rachel Smith. Rachel Smith is currently on state probation and Mr. Cleghorn was told to avoid contact with her. While meeting with the probation officer, Mr. Cleghorn admitted to using methamphetamine with his ex-girlfriend, Michelle Smith. Mr. Cleghorn said he spent the weekend with Michelle Smith after he left inpatient treatment. Rachel Smith has a criminal history for drug related charges. Mr. Cleghorn told the probation officer that Rachel Smith was scheduled to appear in state court on September 25, 2013, regarding new drug charges.

On October 16, 2013, Mr. Cleghorn was a passenger in a vehicle, operated by Michelle Smith, when the vehicle was pulled over by Putnam County Sheriff's Department during a traffic stop, and both individuals were questioned by law enforcement. Ms. Smith is the same person that Mr. Cleghorn admitted to using methamphetamine with prior to his initial appearance on September 24, 2013. The probation officer has repeatedly instructed Mr. Cleghorn to avoid all communication with Ms. Smith.

4. **The defendant shall follow the instructions of the probation officer.**
On August 14, 2013, following his positive drug test for methamphetamine, the probation officer directed Mr. Cleghorn to report to the office for a drug test each Monday, Wednesday, and Friday until he was admitted into the New Leaf Recovery Center, unless instructed differently by the probation officer. Mr. Cleghorn's cellular phone was typically out of "minutes", but he could still send and receive text messages. As a result, Mr. Cleghorn's communication is generally dependent on sending and receiving text messages unless the probation officer instructed him to call. On August 23, 2013, the probation officer verbally directed Mr. Cleghorn to report to his office by 8:00 a.m. on August 26, 2013. The probation officer had a scheduling conflict and sent Mr. Cleghorn a text message on August 25, 2013 instructing him to report at 8:45 a.m instead of 8:00 a.m., as previously instructed. Mr. Cleghorn failed to respond to the message so the probation officer adjusted his schedule and arrived at the office by 7:30 a.m. to ensure he was available when Mr. Cleghorn reported for his drug test, but Mr. Cleghorn failed to report as instructed.

5. **The defendant shall submit to substance abuse treatment at the direction of the U.S. probation officer which may include random urinalysis testing, outpatient treatment, or inpatient treatment not to exceed 30 days which may be followed by up to 90 days in a community corrections center.**
On August 27, 2013, Mr. Cleghorn was admitted to the inpatient substance abuse treatment program at New Leaf Recovery Center in Cookeville, Tennessee. Mr. Cleghorn was given a release date of September 23, 2013. On September 18, 2013, Mr. Cleghorn left inpatient treatment against medical advice. He failed to contact the probation officer upon release. Mr. Cleghorn did not contact the probation officer until September 24, 2013, when he reported on the summons.

6. **The defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer.**
As previously mentioned in Violation 3, Mr. Cleghorn was questioned by a Putnam County Sheriff's Deputy on October 16, 2013. When questioned by the

probation officer on October 21, 2013, Mr. Cleghorn initially denied any contact with law enforcement. After further questioning by the probation officer, Mr. Cleghorn admitted to the contact with law enforcement. He stated he lied to the probation officer because he was embarrassed about the incident.

**Compliance with Supervision Conditions and Prior Interventions:**
Billy Cleghorn is unemployed and reportedly lives with his nephew in Cookeville, Tennessee. Mr. Cleghorn began his term of supervised release on November 27, 2012, and is due to terminate supervision on November 26, 2017.

A report was submitted to the Court on May 22, 2013, regarding Mr. Cleghorn's violations of failure to notify the probation officer at least ten days prior to change in residence on May 9, 2013, association with persons engaged in criminal activity on May 14, 2013, failure to notify the probation officer of contact with law enforcement within 72 hours on May 17, 2013, failure to report to the probation officer on May 17, 2013, and failure to refrain from unlawful use of a controlled substance on May 17, 2013. Your Honor ordered no action at that time. Mr. Cleghorn was given a verbal reprimand and placed on a random drug testing program. Mr. Cleghorn was referred for outpatient substance abuse treatment with Plateau Mental Health on June 3, 2013.

On August 1, 2013, Mr. Cleghorn notified the probation officer he changed his residence without informing the probation officer first. Mr. Cleghorn indicated he moved from his sister's residence to his nephew's residence. On August 21, 2013, the probation officer attempted to contact Mr. Cleghorn at his nephew's residence and was informed by his nephew that Mr. Cleghorn rarely stayed at his residence. His nephew was uncertain of Mr. Cleghorn's whereabouts most nights. On August 22, 2013, Mr. Cleghorn told the probation officer he had stayed at a friend's residence and was assisting her due to her medical condition.

Mr. Cleghorn reported for drug testing as directed on August 16, August 20, August 22, and August 23, 2013. He was negative for all drugs tested on these dates. Mr. Cleghorn failed to report for a drug test on August 26, 2013, as instructed by the probation officer.

On August 26, 2013, Mr. Cleghorn left a voice mail for the probation officer indicating he missed his scheduled drug test and informed the probation officer he needed to discuss new criminal charges. The probation officer attempted to call Mr. Cleghorn but was unsuccessful in contacting him. On August 28, 2013, Rachel Smith, Mr. Cleghorn's girlfriend, contacted the probation officer and stated Mr. Cleghorn was admitted to inpatient treatment at New Leaf Recovery Center on August 27, 2013. The probation officer contacted New Leaf Recovery Center and confirmed Mr. Cleghorn had been admitted on August 27, 2013.

On September 17, 2013, the probation officer submitted documentation to have Mr. Cleghorn designated to the Residential Re-entry Center in Nashville, Tennessee. On November 15, 2013, Mr. Cleghorn was designated to placement at the Residential Re-entry Center in Nashville, Tennessee. Mr. Cleghorn is scheduled to report on December 10, 2013, for a 90 day placement.

On September 24, 2013, Mr. Cleghorn reported on the summons ordered by the Court. Prior to making his initial appearance, Mr. Cleghorn tested positive for methamphetamine and amphetamines. He admitted using the illegal drugs with his ex-girlfriend Michelle Smith. His revocation hearing was originally scheduled for November 1, 2013, but was continued to allow time for his new state charges to be resolved. A new revocation hearing had yet to be scheduled.

When questioned by the probation officer on October 21, 2013, Mr. Cleghorn lied about having any contact with law enforcement and/or having criminal associations. After further questioning, Mr. Cleghorn admitted to spending time with Rachel Smith, and he also admitted to being stopped by law enforcement on October 16, 2013. Mr. Cleghorn was verbally reprimanded and re-instructed to be truthful with the probation officer.

Mr. Cleghorn said he was embarrassed about being caught spending time with Rachel Smith, due to their extensive history of using drugs together.

On November 4, 2013, and November 6, 2013, Mr. Cleghorn tested positive for methamphetamine and amphetamines. Mr. Cleghorn denied the drug use, but was verbally reprimanded by the probation officer for each incident. He was re-instructed to not use any illegal substances.

On November 8, 2013, the probation officer and his supervisor, contacted Mr. Cleghorn at his residence to assess compliance with the terms of supervision. Upon arriving at the residence, the probation officer overheard yelling coming from the garage portion of the residence. Much of the conversation was unclear; however, the probation officer heard a male voice say, "get the fuck out and don't fucking come back. These mother fuckers are coming to see me." After that statement, the garage door opened and a female had just entered a car located in the garage and was closing the door. The probation officer could not identify the female. Mr. Cleghorn was standing at the door leading from the garage into the residence. Mr. Cleghorn made eye contact with the probation officer and immediately closed the garage door before the female in the vehicle was able to leave. Due to the unknown discord apparently occurring inside the home, the probation officer sent a text message to Mr. Cleghorn asking him to meet the probation officer outside, in front of the residence. Mr. Cleghorn complied and met outside with the probation officer. Mr. Cleghorn stated his nephew and his nephew's wife were having marital issues. Mr. Cleghorn said the yelling inside the residence was his nephew and his nephew's wife, contrary to what the probation officer observed in the garage. Mr. Cleghorn denied being involved. Given the situation at the home, the probation officer thought it best to meet at the Cookeville office, about five miles away, for a drug test and to discuss the issues present inside the residence. Mr. Cleghorn was agreeable to this plan. The probation officer waited for 30 minutes at the office, but Mr. Cleghorn failed to report. The probation officer attempted to contact Mr. Cleghorn three times while waiting at the office, but he was unable to contact Mr. Cleghorn.

The probation officer contacted Mr. Cleghorn, who stated he reported to the office and the probation officer was not there. Mr. Cleghorn added that he had left his cell phone at his residence, so he was unable to contact the probation officer. The probation officers went back to Mr. Cleghorn's residence. His nephew was in bed and his nephew's wife had left the residence. Mr. Cleghorn admitted that the disagreement between his nephew and his nephew's wife started in the house. Mr. Cleghorn also admitted that he was the individual in the garage yelling at his nephew's wife when the probation officers arrived. This contradicted his original statement that he was not involved. Mr. Cleghorn stated his nephew's wife agreed to stay at another location to eliminate any problems; however, on November 12, 2013, Mr. Cleghorn reported she was staying at his nephew's residence again.

**Update of Offender Characteristics:**
There is no additional information relevant to this section that has not already been provided in this petition.

**U.S. Probation Officer Recommendation:**
It is respectfully requested that these additional violations be considered at a revocation hearing to be held before Your Honor. These new violations have been discussed with Assistant U.S. Attorney Debra Phillips, who concurs with the recommendation.

Approved: _____
Britton Shelton
Supervisory U.S. Probation Officer

## SENTENCING RECOMMENDATION
### UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE
### UNITED STATES V. BILLY CLEGHORN, CASE NO. 2:99-00014

**GRADE OF VIOLATION:** B
**CRIMINAL HISTORY:** IV

**ORIGINAL OFFENSE DATE:** PRIOR TO APRIL 30, 2003  VCCA PROVISIONS

|  | Statutory Provisions | Guideline Provisions | Recommended Sentence |
|---|---|---|---|
| CUSTODY: | 2 years (Class C Felony) *18 U.S.C. § 3583(e)(3)* | 12-18 months *U.S.S.G. § 7B1.4(a)* | No recommendation |
| SUPERVISED RELEASE: | 36 months less any term of imprisonment *18 U.S.C. § 3583(h)* | 1-3 years *U.S.S.G. § 5D1.2(a)(2)* | No recommendation |

18 U.S.C. § 3583(e)(3) allows for revocation of supervised release and requires the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post release supervision, if the Court finds by a preponderance of the evidence that the offender violated a condition of supervised release. When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized under subsection (e)(3), the Court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release, in accordance with 18 U.S.C. § 3583(h).

**Guideline Policy Statements:** Upon a finding of a Grade A or B violation, the Court shall revoke probation or supervised release. U.S.S.G. § 7B1.3(a)(1).

Respectfully Submitted,

Brad Bartels
U.S. Probation Officer

Approved: _____
Britton Shelton
Supervisory U.S. Probation Officer

# AFFIDAVIT OF COMPLAINT
## IN THE GENERAL SESSIONS COURT OF PUTNAM COUNTY

Case No: _____

**Defendant(s) (Name and Address)**

STATE OF TENNESSEE VS. Billy Cleghorn
1478 Glenn Road
Cookeville, TN 38501

DOB: 05/30/1961
SS#: 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
DL#: 084401595
DL ST: TN

The undersigned affiant, after being duly sworn according to law, states that the above named defendant, whose name is otherwise unknown to the affiant, committed the offense of TCA 39-17-425(a)(1), which is Unlawful Possession Of Drug Paraphernalia, in PUTNAM County on or about 08/24/2013. Further, affiant makes oath that the essential facts constituting said offense, the sources of affiant's information, and the reasons why his/her information is believable concerning said facts are as follows:

Billy Cleghorn committed the offense of unlawful possession of drug paraphernalia by having in his possession drug paraphernalia with intent to introduce into the human body a controlled substance. On or about 08/24/13 the above subject was in possession of digital scales, and assorted plastic baggies and unknown white pills which is classified as drug paraphernalia. Said offense occurred in Putnam County, Tennessee.

Affiants - Name Address, Telephone#
James Lee 3rd 354
Cookeville Police Dept
Telephone #: 931-526-2125
Affiant Signature: _____

Sworn to and subscribed before me this: 08/24/2013
James Lane — J.C. Name
_____ Judicial Commissioner

## STATE OF TENNESSEE ARREST WARRANT

Prosecutor notified: _____ Date: _____ By Officer: _____

### IN THE GENERAL SESSIONS COURT OF PUTNAM COUNTY
### STATE OF TENNESSEE VS. BILLY CLEGHORN

TO ANY LAWFUL OFFICER OF THE STATE:

Based upon the affidavit(s) of complaint made and sworn to before me by: James Lee 3rd 354, there is probable cause to believe that the offense(s) of 39-17-425(a)(1) - Unlawful Possession Of Drug Paraphernalia has been committed in PUTNAM County, Tennessee and charging BILLY CLEGHORN thereof, you are therefore commanded in the name of the State of Tennessee forthwith to arrest and bring the said accused person before the Court of General Sessions of PUTNAM County, Tennessee, to answer the said charges.

08/24/2013

Judge - Judicial Commissioner

Reason: 2 - THERE IS A REASONABLE LIKELIHOOD THAT THE OFFENSE WOULD CONTINUE OR RESUME, OR THAT PERSONS OR PROPERTY WOULD BE ENDANGERED BY THE ARRESTED PERSON

# AFFIDAVIT OF COMPLAINT
## IN THE GENERAL SESSIONS COURT OF PUTNAM COUNTY

Case No:

**Defendant(s) (Name and Address)**

STATE OF TENNESSEE VS. Billy Cleghorn
1478 Glenn Road
Cookeville, TN 38501

DOB: 05/30/1961
SS#: 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
DL#: 084401595
DL ST: TN

The undersigned affiant, after being duly sworn according to law, states that the above named defendant, whose name is otherwise unknown to the affiant, commited the offense of TCA 39-16-503, which is Tampering With/fabricating Evidence, in PUTNAM County on or about 08/24/2013. Further, affiant makes oath that the essential facts constituting said offense, the sources of affiant's information, and the reasons why his/her information is believable concerning said facts are as follows:

Billy Cleghorn committed the offense of tampering with/fabricating evidence with the intent to destroy or conceal. On the above date the defendant placed a small plastic baggie with a dark colored substance thought to be crack cocaine in his mouth and swallowed it when officers asked him to spit it out. In the vehicle the defendant was driving the affiant did find two pills unidentified pills believed to be scheduled drugs. Said offense occurred in Putnam County, TN.

**Affiants - Name Address, Telephone#**
James Lee 3rd 354
Cookeville Police Dept
Telephone #: 931-526-2125
Affiant Signature:

Sworn to and subscribed before me this: 08/24/2013
James Lane J.C. Name
_____ Judicial Commissioner

## STATE OF TENNESSEE ARREST WARRANT

| Prosecutor notified: | Date: | By Officer: |

### IN THE GENERAL SESSIONS COURT OF PUTNAM COUNTY
### STATE OF TENNESSEE VS. BILLY CLEGHORN

TO ANY LAWFUL OFFICER OF THE STATE:

Based upon the affidavit(s) of complaint made and sworn to before me by: James Lee 3rd 354, there is probable cause to believe that the offense(s) of 39-16-503 - Tampering With/fabricating Evidence has been committed in PUTNAM County, Tennessee and charging BILLY CLEGHORN thereof, you are therefore commanded in the name of the State of Tennessee forthwith to arrest and bring the said accused person before the Court of General Sessions of PUTNAM County, Tennessee, to answer the said charges.

08/24/2013

Judge - Judicial Commissioner

**Reason: 2** - THERE IS A REASONABLE LIKELIHOOD THAT THE OFFENSE WOULD CONTINUE OR RESUME, OR THAT PERSONS OR PROPERTY WOULD BE ENDANGERED BY THE ARRESTED PERSON

# Cookeville Police Department
## PRELIMINARY INVESTIGATIVE REPORT

CONFIDENTIAL  D.S.P. 102 - M

| Code Number | Reported By | Page No. | Origin | Date | Time | Case Number |
|---|---|---|---|---|---|---|
| TN0710100 | 354 - Officer James Lee, III | 1 | 03 - Officer Initiated | 08/24/2013 | 20:25 | 201327127 |

### COMPLAINANT
- Comp No: 1
- NAME: Lee, James
- Residence Phone: (931) 526-0126
- Business Phone: (931) 526-0126
- ADDRESS: 10 E BROAD ST
- City: Cookeville
- State: TN
- Zip: 38501-

### VICTIM
- Vic No: 1 (blank)
- Victim Related Events: #2, #3 checked
- Vic No: 2 (blank)
- Victim Related Events: #1 checked

### Events

**Event No 1** — Tampering with or Fabricating Evidence
- Code No: 290
- (C) Completed
- Hate Crime: 88 - None
- Occurred Between: 08/24/2013 20:25 SAT and 08/24/2013 23:34 SAT
- Acc/Susp Used: N

**Event No 2** — Drug Paraphernalia, Possession
- Code No: 35B
- (C) Completed
- ADDRESS: 132 N CHESTNUT AVE
- City: COOKEVILLE, State: TN, Zip: 38501-
- Type Location: 13 - Highway/Road/Alley/Street/Sidewalk
- Acc/Susp Used: N
- Criminal Activity: P
- Hate Crime: 88 - None

### ACC/SUSP

**ASO No 1** — A (checked)
- NAME: CLEGHORN, BILLY
- Residence Phone: (931) 858-1073
- ADDRESS: 410 LOANE OAK DR
- City: COOKEVILLE, State: TN, Zip: 38501-
- Arrest Number: 201327127 - 1
- SSAN: 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
- Race: W, Sex: M, Date of Birth: 05/30/1961
- Height: 6'00", Weight: 200
- Hair Color: BAL - Bald
- Hairstyle: UNK - Unknown
- Armed: No X; RH X; AB

**ASO No 2** — A (checked)
- NAME: ALLEN, CHRISTAL JEAN
- Residence Phone: (931) 704-3418
- ADDRESS: 118 N CHESTNUT AVE
- City: Cookeville, State: TN, Zip: 38501-
- Arrest Number: 201327127 - 2
- SSAN: 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
- Race: W, Sex: F, Date of Birth: 04/29/1977
- Height: 5'04", Weight: 140
- Hair Color: BLN - Blonde or
- Eye Color: GRN - Green
- Hairstyle: STR - Straight
- Armed: No X; RH X; AB
- Marks/Scars Location: Tattoo - Right - Hand ; Tattoo - Left - Leg ; Tattoo - Left - Foot ; Tattoo - Right - Leg

### VEHICLE
- Veh No: 1
- Year: 2001
- Make: Lincoln
- Model: Towncar
- Type: PC - Passenger Car
- License Number: Y952913
- Year: 2013, State: TN
- VIN: 1LNHM82WX1Y662349
- Owner's Name: 13 - WINNINGHAM, BILLY RAY
- Address: 1934 BOUTON BEND, Cookeville, TN 38501
- Stored - Name: 41 S Willow Ave
- Involved: X

### DRUGS

| Type | Whole Quantity | Fractional Quantity | Measurement | Estimated Value |
|---|---|---|---|---|
| P - Other Drugs | 6 | | DU - Dosage Units (Number of Capsu | $60.00 |
| P - Other Drugs | 1 | | DU - Dosage Units (Number of Capsu | $1.00 |
| P - Other Drugs | 1 | | DU - Dosage Units (Number of Capsu | $1.00 |

| Scene Processed By | Prints Found ☐ Yes ■ No / Photographed ☐ Yes ■ No | Type Evidence Taken | When Stored Initially |
|---|---|---|---|

**ARSON**

| Loss Data | Value | Loss | Origin of Fire | Bomb Data |
|---|---|---|---|---|
| Structures | | | Incendiary ☐ | Explosive Data |
| Contents | | | Undetermined ☐ | Incendiary Device |
| Fixtures | | | Accidental ☐ | Threat |
| Vehicles | | | Suspicious ☐ | Other |
| Miscellaneous | | | | |

**PROPERTY**

| Event Code | Prop. Code | Quantity | Description | Make/Model | Serial Number | P. Loss | Value | Recov. Date |
|---|---|---|---|---|---|---|---|---|
| 35B | 16 | 1 | box of sandwich baggies | | | 6 | 2.00 | |
| 35B | 77 | 1 | digital scale | | | 6 | 5.00 | |
| 35B | 16 | 2 | small bags of epsom salt | | | 6 | 5.00 | |
| 35B | 11 | 2 | samsung cell phones | | | 6 | 50.00 | |
| 35B | 11 | 1 | plastic pill cutter | | | 6 | 2.00 | |

| Jurisdiction Stolen | Jurisdiction Recovered | Number of Motor Vehicles Stolen | Number of Motor Vehicles Recovered |
|---|---|---|---|

**DEATH**

| Next of Kin Notified Name | Address | Relationship | Physician Pronouncing Death(Name) |
|---|---|---|---|
| Attending Physician Name | Address | Reason for Treatment | Pronounced Death-Date / Time |
| Last Person to See Subject Alive Name | Address | | Date / Time |
| Rescue Unit at Scene Name | Address | Medical Examiner | Type Death |

**Summary**
On 8-24-13, I was headed North on N Willow Ave when I noticed a white in color Lincoln Town car also headed North on N Willow Ave. I observed the vehicle make a left turn headed West onto W 3rd Street. I proceeded to get in behind the vehicle, and noticed it did not have a License Plate. I started to call in the traffic stop as we made a left turn onto Chestnut Ave headed South, and noticed a 30 Day Registration in the rear window on the right side. I activated my lights and siren and had the vehicle stop in the area of 132 Chestnut Ave. I advised Dispatch of the 30 Day Tag, the type of vehicle, and the number of occupants inside it. I then approached the vehicle on the driver's side and asked the driver for his License, Registration, and Insurance. I stated to him the reason I stopped him was because he did not have his lights on while driving the vehicle at night. The driver who I identified as Billy Cleghorn, handed me his License, but advised there were no registration papers for the vehicle, and that he did not have any Insurance paperwork for it either. Mr. Cleghorn stated the vehicle was his son's, and that he had the missing paperwork. I then asked for the other

**Solvability Factors**

| YES | NO | | YES | NO | | Exceptional Clearance (Status 6) |
|---|---|---|---|---|---|---|
| ☐ | ■ | a. Can a suspect be named? | ☐ | ■ | g. Was there a unique or unusual M.O. employed? | ☐ (A) Death of Offender |
| ☐ | ■ | b. Is the suspect known? | ☐ | ■ | h. Was there significant evidence? | ☐ (B) Prosecution Declined |
| ☐ | ■ | c. Can the suspect be identified? | ☐ | ■ | i. Is property traceable? | ☐ (C) Extradition Declined |
| ☐ | ■ | d. Has the suspect been seen before? | ☐ | ■ | j. Was there a minimum delay in reporting? | ☐ (D) Refuse to Cooperate |
| ☐ | ■ | e. Was there a witness to the crime? | ☐ | ■ | k. Is there a significant reason to believe crime may be solved with a reasonable amount of investigative effort? | ☐ (E) Juvenile, No Custody |
| ☐ | ■ | f. Can the suspect vehicle be identified? | | | | ■ (N) Not Applicable |

**CASE STATUS (Check One)**
☐ 1 Active      ☐ 5 Inactive      ■ 4 Closed Arrest
☐ 2 Active - TOT O/A   ☐ 6 Inactive WOF   ☐ 8 Closed Exception
☐ 3 Unfounded   ☐ 7 Closed Service

Case Closed (Status 4 or 8): ☐ Juvenile  ■ Adult
Ref. Other Case Number:
Negative File Number:

| Date/Time Notified | Date/Time Arrived at Scene | Date/Time Cleared Scene | Original Report ☐ / Supplemental Report ☐ |
|---|---|---|---|
| 08/24/2013  20:25 | 08/24/2013  20:25 | 08/24/2013  23:34 | |

| Information Copies Furnished to: | Approving Supervisor | Date | Date Report Submitted |
|---|---|---|---|
| | 308 - Sergeant James D. Harris | 08/25/2013 | 08/24/2013 |

| Code Number | Reported By | | Origin | Date | Time | Case Number |
|---|---|---|---|---|---|---|
| TN0710100 | 354 - Officer James Lee, III | Page No. 3 | 03 - Officer Initiated | 08/24/2013 | 20:25 | 201327127 |

Summary

two occupant's identifications, in which they complied. I walked back to my Patrol Car and had Dispatch check all three subjects for Warrants and Mr. Cleghorn for a valid Drivers License. Off. K. Frye also arrived on scene about that time and assisted with the stop. Dispatch came back a short time later and advised Mr. Cleghorn and the front passenger, Dallas Allen, were on Federal Probation, but all subjects were clear of any Warrants. I had already started writing a Citation for No Insurance to Mr. Cleghorn when Dispatch advised same. I then made my way back to the vehicle and approached Mr. Cleghorn. I asked Mr. Cleghorn to step out and come back towards my vehicle with me. Mr. Cleghorn complied and I advised him that I was going to give him a Warning for not having his lights on, and a Citation for the Insurance. I did advised Mr. Cleghorn on how to correct the problem with the Insurance, as to bring a copy of valid Insurance at the time of the stop. I asked Mr. Cleghorn if he was on Probation, and he said yes. I then stated to Mr. Cleghorn, that he did not care if I searched the vehicle then, and he said he did not care. I asked Mr. Cleghorn if he had any weapons on his person, and asked if he minded me patting him down for weapons. Mr. Cleghorn said he did not mind and I removed a small pocket knife from his pocket, that he advised me about and hold on to it for the duration of the stop. Sgt. J. Harris also arrived on scene and assisted. I asked Sgt. Harris if he would take his K9 around the vehicle and he said yes. I then had the other two occupant's step out of the vehicle and step back by Off. Frye. Sgt. Harris then called me over to his vehicle while he was getting his K9, and told me he observed something appeared to be in Mr. Cleghorn's mouth. I then went back to Mr. Cleghorn and asked him if he had anything in his mouth. Mr. Cleghorn hesitated to open his mouth, and when she finally did, he forced his tongue to the left side of his mouth. I told Mr. Cleghorn to move his tongue, and when he did, I noticed what appeared to be a plastic baggy, but Mr. Cleghorn then attempted to swallow same. I told Mr. Cleghorn to spit it out, but he was intent on swallowing what was in his mouth and turned away from me. I then grabbed Mr. Cleghorn and attempted to force him to the ground, but he resisted. I was able to get Mr. Cleghorn to the ground with the assistance of Off. Frye, but Mr. Cleghorn stated he swallowed his "gum". I placed Mr. Cleghorn under arrest at that time for Tampering with Evidence, and placed him in the rear seat of my Patrol Car. Sgt. Harris then conducted a search of the vehicle, and I assisted. Sgt. Harris located a small unknown pill at the time under the front passenger seat, and a presription bottle in the rear seat area which had the label torn off of it, along with a plastic pill cutter. Sgt. Harris also located part of the label that was torn off. Sgt. Harris asked the rear passenger, Christal Allen if the bottle was her's and she finally stated it was. The front passenger, Dallas Allen was also detained at that time. I asked Dispatch to send the next available Wrecker, and continued to search the vehicle. I opened the glove box of the vehicle and located two bottles, one prescription bottle for Omeprazle and a bottle of some pills which turned out to be vitamins. I opened the trunk of the vehicle and located a box of sandwich baggies, two small bags of Epsom Salt, a small unknown diamond shaped pill, and a digital scale that was hidden under the trunk mat on the right side. I called PCSO and requested a female Deputy to our location to search Ms. Allen. A female deputy arrived shortly after and Ms. Allen came clean stating she had some Subutex hidden in her crotch. Once the female Deputy arrived, Ms. Allen pulled three Subutex out of her crotch area and handed them over. Ms. Allen said she has a prescription for the pills, but could not provide same. Ms. Allen was then placed under arrest at that time for Simple Possession. The female Deputy also transported Ms. Allen to PCSO Jail for me at that time. Americollision arrived on scene and towed the vehicle. There were also two cell phones that were left in the vehicle by Mr. Cleghorn and Ms. Allen,

| Code Number | Reported By | Page No. | Origin | Date | Time | Case Number |
|---|---|---|---|---|---|---|
| TN0710100 | 354 - Officer James Lee, III | 4 | 03 - Officer Initiated | 08/24/2013 | 20:25 | 201327127 |

**Summary**

both of which were taken as evidence. Dallas Allen was released on his own accord, and left the area on foot. I then transported Mr. Cleghorn to PCSO Jail for processing. Upon arrival, I released Mr. Cleghorn to PCSO Intake, and made contact with the Judicial Commissioner. Mr. Cleghorn was given a $2000.00 Bond for Tampering with Evidence and Possession of Drug Paraphernalia. Ms. Allen was searched in the Jail and found to have three more Subutex hidden inside her Vagina. The additional Subutex were seized and she was given a $2000.00 Bond for Simple Possession, since she cooperated and advised she probably still had some pills on her before she went into the Jail. I then went back to the Police Station, where I placed the seized items into Evidence. I also completed a TBI Lab Request form for the six Subutex, and the other two pills, which Pill Identifier stated were Lisinopril and Promethazine HCL. Also, a hold was placed on the Lincoln.

## Cookeville Police Department
### PRELIMINARY INVESTIGATIVE REPORT
### (CONTINUATION)

CONFIDENTIAL

D.S.P. 102 - M

| Code Number | Reported By | Page No. | Origin | Date | Time | Case Number |
|---|---|---|---|---|---|---|
| TN0710100 | 354 - Officer James Lee, III | 6 | 03 - Officer Initiated | 08/24/2013 | 20:25 | 201327127 |

### Property

| Event Code | Prop. Code | Quantity | Description | Make/Model | Serial Number | P Loss | Value | Recov. Date |
|---|---|---|---|---|---|---|---|---|
| 35B | 65 | 1 | ID Paper | | | 6 | | |
| 35A | 10 | 6 | Subutex | | | 6 | | |
| 35B | 08 | 1 | Promethazine HCL pill | | | 6 | 1.00 | |
| 35B | 08 | 1 | Lisinopril pill | | | 6 | 1.00 | |
| 290 | 10 | | crack cocain | | | 4 | 1.00 | |

LF021
REV 05/01

# VIOLATION WORKSHEET

1. **Defendant** Billy Cleghorn

2. **Docket Number** *(Year-Sequence-Defendant No.)* 0650 2:99CR00014 - 1

3. **District/Office** Middle District of Tennessee

4. **Original Sentence Date** 09 / 27 / 2000
                              month  day  year

5. **Original District/Office**
   *(if different than above)*

6. **Original Docket Number** *(Year-Sequence-Defendant No.)*

7. **List each violation and determine the applicable grade (see §7B1.1):**

| Violation(s) | Grade |
|---|---|
| Refrain from any unlawful use of a controlled substance | C |
| Shall not commit another federal, state, or local crime | B |
| Shall not associate with any persons engaged in criminal activity | C |
| Shall follow the instructions of the probation officer | C |
| Shall submit to substance abuse treatment including thirty day inpatient | C |
| Notify the probation officer within 72 hours of contact with law enforcement | C |

8. **Most Serious Grade of Violation** *(see §7B1.1(b))*      **B**

9. **Criminal History Category** *(see §7B1.4(a))*      **IV**

10. **Range of Imprisonment** *(see §7B1.4(a))*      **12-18 months**

11. **Sentencing Options for Grade B and C Violations Only** *(Check the appropriate box):*

☐ (a) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is at least one month but not more than six months, §7B1.3(c)(1) provides sentencing options to imprisonment.

☐ (b) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is more than six months but not more than ten months, §7B1.3(c)(2) provides sentencing options to imprisonment.

☒ (c) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is more than ten months, no sentencing options to imprisonment are available.

Mail documents to: United States Sentencing Commission
Ste 2-500, South Lobby, One Columbus Cir, NE
Washington, DC 20002-8002

**Defendant** Billy Cleghorn

12. **Unsatisfied Conditions of Original Sentence**

    List any restitution, fine, community confinement, home detention. or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation (see §7B1.3(d)):

    Restitution($) _____   Community Confinement _____

    Fine($) _____   Home Detention _____

    Other _____   Intermittent Confinement _____

13. **Supervised Release**

    If probation is to be revoked, determine the length, if any, of the term of supervised release according to the provisions of §§5D1.1-1.3 (see §§7B1.3(g)(1)).

    Term: 1 _____ to 3 _____ years

    If supervised release is revoked and the term of imprisonment imposed is less than the maximum term of imprisonment imposable upon revocation, the defendant may, to the extent permitted by law, be ordered to recommence supervised release upon release from imprisonment (see 18 U.S.C. §3583(e) and §7B1.3(g)(2)).

    Period of supervised release to be served following release from _____
    imprisonment:

14. **Departure**

    List aggravating and mitigating factors that may warrant a
    sentence outside the applicable range of Imprisonment:

15. **Official Detention Adjustment (see §7B1.3(e)):** _____ months _____ days

Mail documents to: United States Sentencing Commission
Ste 2-500, South Lobby, One Columbus Cir, NE
Washington, DC 20002-8002